THOMPSON, Judge.
This is an appeal from an order of the Department of Transportation (DOT) directing the removal of outdoor advertising structures (signs) owned by Empire Outdoor Advertising (Empire) without the payment of compensation. We affirm.
Empire raises the following questions on appeal: (1) whether the DOT erred in ruling that Empire’s signs may be removed without payment of compensation; (2) whether the DOT erred in ruling that Empire’s signs are not “on premises” signs; (3) whether the DOT should have dismissed the case because it failed to prove that Empire’s signs are located on a federal highway; and (4) whether the DOT erred in refusing to consider Empire’s exceptions to the recommended order and in denying Empire’s motion for reconsideration.
In 1958 a set of two signs was placed on the side of the “27th Avenue Market” and in 1965 Empire placed a similar set of signs *853 on the side of “El Okey Market.” These markets are small grocery stores on 27th Avenue in Miami. The signs were lawful when erected as there were no state laws or rules regulating and requiring the permitting of signs within city or town limits until January 1, 1975. However, Empire failed to obtain permits for either set of signs on or after January 1, 1975. On May 11, 1981 the DOT served Empire with “notices of violation” on both sets of signs. The notices charged violation of § 479.07(1), Fla. Stat. (1981) for failure to display a state permit tag and violation of Fla.Admin.Code Rule 14-10.06(l)(b)(3) for failure to comply with minimum spacing requirements. Empire promptly filed permit applications with the DOT, which were rejected because during the time Empire had failed to get permits, other signs had been permitted and erected at locations that rendered it impossible for Empire’s signs to meet the spacing requirement.
Section 479.07 requires that Empire’s signs have permits and if not permitted they were illegal. The signs in question were not permitted for more than five years and they were illegal signs from the time that they were required to be permitted by law. Under the provisions of § 479.23 the DOT has a right to remove signs if they have been non-conforming signs for more than five years, and by the terms of § 479.17, the DOT is actually charged with a duty to remove signs “maintained, posted or displayed in. violation of this chapter.”
Section 479.24 requires that compensation be paid upon the removal of all signs lawfully in existence on December 8, 1971 or signs lawfully erected which later become non-conforming. It does not require compensation for illegal signs. Empire’s signs were not only non-conforming but were illegal and had been illegal for more than five years. Although there is no explicit provision in § 479.24 that no compensation shall be paid for an illegal sign, surely the legislature could not have intended that a sign owner could fail or refuse to comply with the permitting law indefinitely and then be fully compensated by the DOT for the removal of its illegally maintained sign. Under the interpretation of § 479.24 urged by Empire, the DOT would be required to pay compensation upon the removal of any sign which had been lawfully in existence on December 8, 1971, without regard to the owner’s non-compliance with law subsequent to that date. A sign owner whose sign was rendered worthless because of changing traffic patterns or for other reasons, and who therefore might be indifferent to or even desirous of the removal of his sign, could obtain full compensation for the sign simply by refusing to obtain a permit or to pay the permit fee. Thus the sign owner would be rewarded for refusing to obey the law. This absurd result is foreclosed by the DOT’s interpretation of § 479.24. The DOT’s interpretation of Chapter 479, which it is charged with administering, is reasonable and should be affirmed.
The signs are not “on premises” signs as defined by § 479.16(1), Fla.Stat. The signs were not “constructed by the owner or lessee of a place of business” but were constructed by Empire, an advertising company.
There is competent substantial evidence to support the hearing officer’s ruling that 27th Avenue in Miami was a federal-aid primary highway.
Even if Empire’s exceptions had been timely filed its exceptions raised no new arguments and did not place any new factual or legal matters before the hearing officer and thus no prejudice resulted from the hearing officer’s refusal to consider them.
AFFIRMED.
ERVIN, C.J., and WIGGINTON, J., concur.